We'll hear the next case, De La Fuente v. The Sherry Netherland. Can you hear me? Mr. Cain? Yes. Alright, you're just doing telephone then? Yes. That's fine, go ahead. Are you ready for my, uh... Yes, we are. You may proceed. May it please the court, Frederick Cains, the appellant plaintiff, Rocky De La Fuente. If, after they rejected his... Mr. Cains, Mr. Cains, are you saving any time for rebuttal? Yes, I believe so, yes. How much time? How much time do I have completely? You have a total of ten minutes. You want to save two minutes for rebuttal? Yes. Okay, so you have, uh... Alright, the clock is being adjusted. You can proceed. You'll have two minutes for rebuttal. The principal issue is when the appellees, the Sherry Netherland, and its director... ...misconduct by the appellant. If, after they rejected his application to purchase a co-op apartment, it obviously would only be after the fact justification for the violation of the Fair Housing Act, discriminating against a member of a projected class, a Latino American and a U.S. citizen by birth. On the merits, De La Fuente was an ideal purchaser. He was a mature, successful real estate developer in his 60s, paying the entire purchase amount of $1.275 million in cash. Mr. Gaines, what evidence is there in the record that his race or national origin was a motivating factor in the board's decision to reject his application? That's the entire merits of the case. We have all of the exhibits, and the only issue was racial discrimination. What evidence is there to show that race was a factor? In other words, can you just point me to something in the record, whether it is testimony or a document or something of an evidentiary nature and not just a conclusion, to show that race was a motivating factor? The issue at bar and the whole issue was the only reason he was turned down was because of race. In the evidence, we show that they never, in New York, never approved a person of Latino or Black or Asian who were the majority of New Yorkers. They could not have had the information, the alternative defense that existed because it didn't exist. You're saying that the evidence of discrimination is that the record shows that no applicant of Latino or Asian or Black background was ever approved? Is that what you're saying? That's one of the things, yes. What else is there? All of the exhibits in the case, we have- There was a 9th Circuit decision that found that he acted untruthfully and in violation of his fiduciary duty and that there was a finding of dishonesty, and there's no evidence that the board didn't have that information when they made the decision. There's no evidence that they did. In fact, we have proof that they didn't because- Well, sir, isn't Mr. Horowitz's testimony under oath and the board minutes reflective that they did, in fact, consider that information before they made the decision? But the evidence shows they didn't. There was no decision. There was no evidence. There was no board of directors meeting. What evidence is there to show that they did not acquire that information until after they rejected him? There's no evidence that they ever received the information because what we have been able to prove by all of the records is that their attorney never provided them with anything. They regarded this and that the only reason was that he was of Latin American. My client was never convicted of anything. That's not the point. The point is that the 9th Circuit found that he had indicated dishonest behavior and untrustworthy behavior. That's a matter for the jury. That's not correct. Sir, but once the sharing of one came forward with legitimate reasons for its denial of the application, you would then have to come forward with evidence that this was pretextual. So what evidence do you have other than to say in a conclusory fashion that it was, in fact, pretextual? I'm either missing the point or. In terms of the summary judgment, the sharing of one came forward with evidence, legitimate non-race-based or national origin or ethnic reasons. There was evidence. They never came forward with it. No one ever read it. No one ever saw it. We have the fact that all of the board members testified that they never saw anything of this matter. It all took place in one day. Their attorney was on the board. It never appeared in the records. It never appears in any document whatsoever. And the only fact was that you had to look to the intent. Judge Engelmeyer held that. Mr. Keynes, Mr. Keynes, there's there's evidence in the record that one Mr. Horvitz said was customary to do an Internet search of every applicant. Of course, of course, it makes absolute sense that a board and would be so easy to do that a board would do an Internet search of applicants. I mean, what evidence is what what evidence is there in the record to show that this was pretext or that there was an anti-Mexican bias? The facts, all of the facts. All right. We'll hear it from the other side. You have two minutes for rebuttal. Mr. Shapiro. Good morning, Your Honors. May it please the court. I'm Peter Shapiro. I hope you can hear me sufficiently. Yes, I believe that the questioning by the court thus far gets to the heart of the issue here. The plaintiff has no issue, excuse me, has no evidentiary basis to support the hypothesis on which this case is founded, which is that the only reason Mr. Horvitz is Mexican-American. There's ample evidence that they did a Google search. They had litigation report provided them by their counsel. They met. And listen to Mr. Horvitz's recommendation that because of the concerns about Mr. Delafuente's integrity, i.e. dishonesty, as reflected by the FDIC findings as upheld by the Ninth Circuit, his history of being litigious, which is confirmed by the litigation report and concerns about his finances. Focusing on his liquidity. That those issues were raised by Mr. Horvitz. He recommended that Mr. Delafuente be rejected. The board agreed with that recommendation, and that was the basis for the determination that he should be rejected. The issue of his being Mexican-American was never discussed, and there's no evidence whatsoever that it was considered by anyone in making a decision to reject Mr. Delafuente. Mr. Delafuente's hypothesis that underlies this case is that the bare fact that he is Mexican-American necessarily connotes that if he was rejected, it was because he's Mexican-American. Obviously, that's not the law. He has to come forward with evidence to show an impermissible motive. He has to show that the legitimate good faith grounds that have been advanced by the defendants, which are supported by ample evidence, are a pretext and that the real reason was discrimination. And the fact is, there's nothing in the record that reflects that. Mr. Shapiro, Mr. Keynes argues that the record shows that no person of color, no minority person was ever approved. Is that in the record? Well, that is certainly their contention, but it's a hollow, disproven hypothesis. Is there evidence one way or the other on that point? Yes, there is. If you look at the, I know it's in the declarations of Susan Hennessey, Michael Ullman, and Teresa Nocerino, which identify the various minority shareholders. One of the ones that's been focused on by name is Mr. Kwok, who is a Chinese national, who is a current shareholder. There is also evidence in the record that there are Mexican shareholders. There is evidence that there's an Indian shareholder. There's evidence that there previously was an African American shareholder. And there are also shareholders from Venezuela, Brazil, and frankly, the building attracts an international group and there are people from many, many countries, some of whom may not be diverse by standards at issue here. But by all lay standards, it's a very diverse building and no one has ever come forward with a scintilla of evidence that anybody's ever been rejected, that anybody's been steered away from applying, that anyone's been blocked. Plaintiffs' papers make reference to the sherry brokers reportedly blocking applicants who don't fit their profile. And again, that's just another hypothesis on which this ill-conceived case is founded and there's nothing in the record that bears that out. We've got a situation here in which Judge Engelmeyer got it exactly right. There is no evidence here of any discriminatory animus. Given that, there was no basis to... Yes, there's an allegation that Michael Allman, who is the executive vice president of the building, who attended the board meeting, met Mr. De La Fuente subsequently and said to him, we don't want your kind. But Judge Engelmeyer very authoritatively explained why no issue of fact was raised by that comment. First of all, Mr. Allman was not a decision maker. And since it's undisputed that nobody on the board ever made any mention of Mr. De La Fuente's background, it would be speculation that... Mr. Keynes, Mr. Keynes, please remain silent until it's your turn. I apologize, Your Honor. Yes, there's no evidence that Mr. Allman could have somehow looked into the hearts of the board members and determined that they had any animus and that they didn't want his kind based on his being Mexican-American. As Judge Engelmeyer went on to say, it's much more likely that by referring to your kind, as Mr. Allman allegedly did, he was referring to somebody who is dishonest as adjudicated by a federal agency and confirmed by a circuit court of appeals. And somebody who has a history of litigiousness, which obviously is an issue of sensitivity to co-op boards. There would be some basis to credit the notion that your kind might refer to Mr. De La Fuente's lineage if there was any evidence to the record other than the fact that his lineage that supported the notion that that's what Mr. Allman might have been referring to. But there is not. It remains purely speculation that that's what he was referring to. If I may, I would just like to pull up the language that Judge Engelmeyer said, under the circumstances, Mr. Allman's statement would not, without more, enable a juror to disregard as pretextual the legitimate justifications for denying De La Fuente's application. I think that that is an excellent summing up of why this comment doesn't get them over the hump to raise an issue of fact, given the wealth of evidence that this was a plain vanilla case of a co-op applicant being denied on completely legitimate grounds that this court cannot second guess, given the absence of any evidence of discriminatory animus whatsoever. If the court has no more questions, I'll yield my time. May I ask you about Judge Engelmeyer's analysis of the New York City human rights law? Did he do an adequate and separate analysis using the more liberal standard that's required? Well, he did not go into any length to separately address the New York City human rights law, and he did not do so because there's nothing in the human rights law that would require a different analysis. There's ample case law that the McDonnell-Douglas standard is applied under the New York City human rights law. You're talking about the New York City human rights law? Yes. There's case law that the courts will apply the McDonnell-Douglas standard under the New York City human rights law, and it was appropriate to do so here. I think that's old case law. I mean, there's a different, lighter standard under the city law. My understanding, and I'm sure you'll correct me if I'm wrong, is that the necessary showing is that the plaintiff was treated less favorably because of his protected characteristic by the defendant. And here, that's a hypothesis only set forth in the complaint, and via discovery, the plaintiff was not able to uncover any evidence suggesting that he was treated less favorably due to his being Mexican-American. He was certainly treated less favorably in that he was rejected. The question is whether it was in part because of his race or national origin. That's correct, and that's what the record is completely devoid of. So it's a hypothesis that his lineage had anything to do with how he was treated, and there's ample evidence that financial honesty and litigiousness factors were sole determinative factors that made him be rejected. I see my time is up. Thank you. Mr. Keynes, you have two minutes for a rebuttal. Your Honor, the 12th Affirmative Defense was after acquired. The history is all in there. The New York City law puts the onus not only on the hotel, which had a minimal amount of insurance for a building that's worth between $1 and $2 billion, which everyone accepted, the facts of the matter were clear. That's why all of the board members rejected that there was ever a meeting. The only black co-op member was Diana Ross, something like 35 years ago, and she's been out of that place for, I don't know, 30 years ago or so. The fact of the matter is the Chinese man that he is discussing is under indictments for everything from murder to every other crime you could imagine. The Indian and Australian and Mexican shareholders have never, in most cases, have never spent a day there. They inherited it from ancestors, and there has never, ever been anyone else that has been checked in any way, shape, or form. We were able to show Mr. Fuente's credit rating is the highest rating you can have. All right, thank you. Mr. Keynes, you're on the phone. You can't see, but you're out of time. Thank you for your argument. Mr. Shapiro, thank you. The court will reserve decision. The remaining cases are on submission. Accordingly, I'll ask the deputy to adjourn. Thank you, Your Honor. Court is adjourned.